1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    DUFF F.,

8                              Plaintiff,            NO. 1:19-CV-3207-TOR

9          v.                                        ORDER GRANTING DEFENDANT'S
                                                     MOTION FOR SUMMARY
10   ANDREW M. SAUL, Commissioner                    JUDGMENT
     of Social Security,

11
                               Defendant.

12

13        BEFORE THE COURT are the parties' cross-motions for summary

14   judgment (ECF Nos. 14, 21).  Plaintiff is represented by D. James Tree.  Defendant

15   is represented by Martha A. Boden.  This matter was submitted for consideration

16   without oral argument.  The Court has reviewed the administrative record and the

17   parties' completed briefing and is fully informed.  For the reasons discussed below,

18   the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

**JURISIDCTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

1  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

2  ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

3  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

4  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

5  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

6  *Sanders*, 556 U.S. 396, 409-10 (2009).

7                  **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

8        A claimant must satisfy two conditions to be considered "disabled" within

9  the meaning of the Social Security Act.  First, the claimant must be "unable to

10  engage in any substantial gainful activity by reason of any medically determinable

11  physical or mental impairment which can be expected to result in death or which

12  has lasted or can be expected to last for a continuous period of not less than twelve

13  months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

14  impairment must be "of such severity that [he or she] is not only unable to do [his

15  or her] previous work[,] but cannot, considering [his or her] age, education, and

16  work experience, engage in any other kind of substantial gainful work which exists

17  in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

18        The Commissioner has established a five-step sequential analysis to

19  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

20  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

   If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

   At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

   If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

1  defined generally as the claimant's ability to perform physical and mental work

2  activities on a sustained basis despite his or her limitations (20 C.F.R. §

3  416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

4        At step four, the Commissioner considers whether, in view of the claimant's

5  RFC, the claimant is capable of performing work that he or she has performed in

6  the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

7  capable of performing past relevant work, the Commissioner must find that the

8  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

9  performing such work, the analysis proceeds to step five.

10       At step five, the Commissioner considers whether, in view of the claimant's

11  RFC, the claimant is capable of performing other work in the national economy.

12  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

13  must also consider vocational factors such as the claimant's age, education and

14  work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

15  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

16  416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

17  analysis concludes with a finding that the claimant is disabled and is therefore

18  entitled to benefits.  *Id.*

19       The claimant bears the burden of proof at steps one through four above.

20  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

1  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

2  capable of performing other work; and (2) such work "exists in significant

3  numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

4  700 F.3d 386, 389 (9th Cir. 2012).

5      "A finding of 'disabled' under the five-step inquiry does not automatically

6  qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th

7  Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).

8  When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ

9  must determine whether the DAA is a material factor contributing to the disability.

10 20 C.F.R. § 416.935(a).  In order to determine whether DAA is a material factor

11 contributing to the disability, the ALJ must evaluate which of the current physical

12 and mental limitations would remain if the claimant stopped using drugs or

13 alcohol, then determine whether any or all of  the remaining limitations would be

14 disabling.  20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be

15 disabling, DAA is a contributing factor material to the determination of disability.

16 *Id.*  If the remaining limitations would be disabling, the claimant is disabled

17 independent of the drug or alcohol addiction and the addiction is not a contributing

18 factor material to disability.  *Id.*  The claimant has the burden of showing that DAA

19 is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 6

1                             **ALJ'S FINDINGS**

2          On June 28, 2016, Plaintiff filed an application for Title XVI supplemental

3   security income benefits, alleging a disability onset date of December 8, 2014.  Tr.

4   188-202.  The application was denied initially, Tr. 115-18, and on reconsideration,

5   Tr. 122-24.  Plaintiff appeared at a hearing before an administrative law judge

6   ("ALJ") on June 20, 2018.  Tr. 37-65.  On August 13, 2018, the ALJ denied

7   Plaintiff's claim.  Tr. 12-34.

8          At step one of the sequential evaluation analysis, the ALJ found Plaintiff had

9   engaged in substantial gainful activity from July 2017 through the date of the

10  ALJ's decision, but that there had been a continuous 12-month period during

11  which Plaintiff did not engage in substantial gainful activity.  Tr. 18-19.  At step

12  two, the ALJ found Plaintiff had the following severe impairments: chronic

13  depression, personality disorder, ongoing methamphetamine abuse and

14  dependence, mild lumbago, and hepatitis C.  Tr. 19.  At step three, the ALJ found

15  that Plaintiff's impairments, including the substance use disorder, met section

16  12.04 of the listed impairments.  Tr. 20.  However, the ALJ found that if Plaintiff

17  stopped the substance use, Plaintiff would not have an impairment or combination

18  of impairments that meets or medically equals the severity of a listed impairment.

19  Tr. 22.  The ALJ then found that, if Plaintiff stopped the substance use, Plaintiff

20

would have the RFC to perform medium work with the following nonexertional

limitations:

> [H]e is able to understand, remember, and complete simple repetitive tasks; he is able to maintain attention and concentration on simple repetitive tasks for two hour intervals between regularly scheduled breaks; there should be a predictable work environment with seldom changes; there should only be simple judgment/decision making; there should be fast paced production rate of pace; interaction with the public should be brief and superficial; interaction with coworkers should be non-collaborative, no teamwork; and he should deal with things, rather than people.

Tr. 23.

At step four, the ALJ found that, if Plaintiff stopped the substance use, he would be able to perform past relevant work as a laborer, salvage. Tr. 28-29. The ALJ concluded that substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use, so Plaintiff was not under a disability, as defined in the Social Security Act, from June 28, 2016, the filing date, through August 13, 2018, the date of the ALJ's decision. Tr. 29.

On July 10, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

//

//

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether substantial evidence supports the ALJ's finding that Plaintiff's DAA was material;

2. Whether the ALJ properly weighed Plaintiff's symptom testimony; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 2.

**DISCUSSION**

**A. Material DAA**

Plaintiff challenges the ALJ's conclusion that Plaintiff's substance use was material to the disability determination. ECF No. 14 at 4-7. Social Security claimants may not receive benefits where DAA is a material contributing factor to disability. *See* 20 C.F.R. § 416.935(a); 42 U.S.C. § 423(d)(2)(c). DAA is a materially contributing factor if the claimant would not meet the SSA's definition of disability if the claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). Plaintiff has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability. *Parra*, 481 F.3d at 748; *see also* SSR 13-2p, 2013 WL 621536, at *4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

1        Here, the ALJ found that Plaintiff's ongoing methamphetamine use was

2   material to Plaintiff's disability determination.  Tr. 22, 29.  The ALJ found that

3   Plaintiff's impairments met the severity of a listed impairment when Plaintiff's

4   substance use disorder was included in the analysis.  Tr. 20.  However, the ALJ

5   noted that when Plaintiff maintained a period of sobriety in the spring and summer

6   of 2017, Plaintiff's functioning improved significantly to the point that he could

7   return to full-time work.  Tr. 23-25; *see* Tr. 836 (May 4, 2017: Plaintiff completed

8   intensive inpatient treatment); Tr. 767 (June 7, 2017: Plaintiff reported putting out

9   job applications, volunteering at a food bank, and attending résumé-writing

10  classes); Tr. 758-59 (June 22, 2017: Plaintiff reported being 72 days sober and

11  attributed a decrease in his depressive symptoms to his sobriety; Plaintiff reported

12  that his mental health symptoms were "well controlled"); Tr. 835 (July 3, 2017:

13  Plaintiff completed intensive outpatient treatment); Tr. 731 (July 3, 2017: Plaintiff

14  reported looking for full-time employment); Tr. 753 (August 3, 2017: Plaintiff

15  reported he was able to open a bank account and had been saving money).  The

16  ALJ also identified evidence in the record that attributed Plaintiff's mental

17  impairments to his ongoing substance use.  Tr. 20-21, 26; *see* Tr. 515-16

18  (September 21, 2016: Dr. Billings noted Plaintiff's mental health symptoms were

19  "common among individuals who are methamphetamine users"); Tr. 549 (October

20  21, 2016: Dr. Chase observed "much of [Plaintiff's] psychiatric symptoms appear

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

1   to be meth related").  Based on this record, the ALJ reasonably concluded that

2   Plaintiff's methamphetamine use was material to the disability determination.

3          Plaintiff challenges the ALJ's finding by arguing for a different

4   interpretation of the medical opinion evidence.  ECF No. 14 at 5-6.  Plaintiff's

5   specific challenges to the ALJ's evaluation of the medical opinion evidence are

6   addressed below.

7          Additionally, Plaintiff challenges the ALJ's DAA finding by identifying

8   evidence in the record showing Plaintiff had mental impairments during times of

9   sobriety and evidence that Plaintiff was able to continue working full-time after

10  relapsing on methamphetamine.  ECF No. 14 at 7.  However, it is the ALJ's

11  responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53

12  F.3d 1035, 1039 (9th Cir. 1995).  Even if the "evidence is susceptible to more than

13  one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r

14  of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks

15  omitted).  The ALJ noted that Plaintiff's own testimony was that his

16  methamphetamine use decreased significantly during the period in which he

17  worked while continuing to use methamphetamine.  Tr. 24; *see* Tr. 58.  The ALJ

18  reasonably concluded that Plaintiff's improved functioning while sober or using

19  methamphetamine at a significantly decreased level indicated that his heavy

20  methamphetamine use during the relevant period was material to the disability

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

1    analysis.  Tr. 22-23.  Although Plaintiff urges this Court to adopt a different

2    interpretation of the evidence, the reviewing court is not a finder of fact.  *Fair v.*

3    *Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Where the ALJ's interpretation of the

4    record is reasonable as it is here, it should not be second-guessed.  *Rollins v.*

5    *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ's DAA materiality

6    finding is supported by substantial evidence.

7        **B.  Plaintiff's Symptom Testimony**

8        Plaintiff contends the ALJ failed to rely on clear and convincing reasons to

9    discredit his symptom testimony.  ECF No. 14 at 16-20.

10       An ALJ engages in a two-step analysis to determine whether to discount a

11   claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

12   1119029, at *2.  "First, the ALJ must determine whether there is 'objective

13   medical evidence of an underlying impairment which could reasonably be

14   expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

15   1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

16   claimant is not required to show that [the claimant's] impairment 'could reasonably

17   be expected to cause the severity of the symptom [the claimant] has alleged; [the

18   claimant] need only show that it could reasonably have caused some degree of the

19   symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

20   1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that, if Plaintiff stopped the substance use, Plaintiff's

impairments could reasonably be expected to cause the alleged symptoms;

however, Plaintiff's statements concerning the intensity, persistence, and limiting

effects of those symptoms were not entirely consistent with the evidence.  Tr. 24.

### 1.  Inconsistent Reporting of Drug Use

The ALJ found Plaintiff's symptom reporting was less credible because the

record showed Plaintiff inconsistently reported his drug use.  Tr. 24-25.  The ALJ

may consider "ordinary techniques of credibility evaluation," such as reputation for

lying, prior inconsistent statements concerning symptoms, and other testimony that

"appears less than candid."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Inconsistent statements about drug use are appropriate grounds for the ALJ to

discount a claimant's reported symptoms.  *Thomas*, 278 F.3d at 959.

Here, the ALJ noted that Plaintiff repeatedly reported himself to be sober at

times when other evidence in the record indicated he was still using

methamphetamine.  Tr. 24-25; *compare* Tr. 335 (September 15, 2015: Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

reported being sober since March 2015) *with* Tr. 499 (September 30, 2015:

Plaintiff reported he had not used methamphetamine since January 2015) *and* Tr.

291 (August 4, 2015: Plaintiff reported that he had used methamphetamine twice

since April 2015).  The ALJ reasonably concluded that this inconsistent reporting

of his methamphetamine use undermined the credibility of Plaintiff's symptom

reporting.  Tr. 24-25.  This finding is supported by substantial evidence.

### 2.  *Work Activity*

The ALJ found Plaintiff's symptom reporting was inconsistent with his own

work history.  Tr. 25.  Working with an impairment supports a conclusion that the

impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir.

1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir.

2009) (seeking work despite impairment supports inference that impairment is not

disabling).  Here, the ALJ noted that Plaintiff reported looking for employment

throughout the record.  Tr. 25; *see* Tr. 531 (November 15, 2016: Plaintiff reported

applying to jobs because he was "fed up waiting around to get approved for SSI");

Tr. 767 (June 7, 2017: Plaintiff reported volunteering at a food bank and putting

out job applications); Tr. 731 (July 6, 2017: Plaintiff reported working part-time

and applying for full-time work).  The ALJ reasonably concluded that Plaintiff's

history of applying for jobs and working, particularly when not using

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15

1   methamphetamine, was inconsistent with his allegations of disability despite

2   ongoing drug use.  Tr. 25.  This finding is supported by substantial evidence.

3       *3.   Symptom Improvement*

4       The ALJ found Plaintiff's symptom allegations were inconsistent with his

5   record of symptom improvement when he was sober and compliant with drug

6   treatment.  Tr. 25.  The effectiveness of mitigating measures is a relevant factor in

7   determining the severity of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3).

8   Here, the ALJ found that Plaintiff reported an improvement in his mental health

9   symptoms during his period of extended sobriety in the spring and summer of

10  2017.  Tr. 25; *see* Tr. 770 (May 31, 2017: Plaintiff reported an improvement in

11  symptoms with a medication adjustment); Tr. 764 (June 14, 2017: Plaintiff

12  reported feeling good now that he was sober and taking medications as prescribed);

13  Tr. 758-59 (June 22, 2017: Plaintiff attributed a decrease in his depressive

14  symptoms to sobriety, stated that he felt his mental health symptoms were "well

15  controlled," and scored a 3 on the PHQ-9, which exceeded his treatment goal of

16  scoring a 5 on the PHQ-9).  Plaintiff challenges the ALJ's reliance on evidence

17  from after the closed period as irrelevant to Plaintiff's functioning during the

18  closed period.  ECF No. 14 at 20.  However, the ALJ's reliance on this evidence

19  from Plaintiff's period of sobriety is relevant to the ALJ's DAA analysis and

20  consideration of Plaintiff's functioning if Plaintiff were to stop the substance use.

*See* SSR 13-2p, 2013 WL 621536, at *12.  The ALJ reasonably concluded that the evidence showing improvement in Plaintiff's symptoms while sober was inconsistent with his symptom allegations.  Tr. 25.  This finding is supported by substantial evidence.

### 4.  *Lack of Supporting Medical Evidence*

The ALJ found that Plaintiff's symptom allegations were not supported by the medical evidence.  Tr. 24, 26.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Additionally, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra*, 481 F.3d at 751 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Here, the ALJ noted that despite alleging disabling psychiatric conditions, Plaintiff never required emergent psychiatric intervention.  Tr. 24; *see* Tr. 45.  The ALJ also summarized the consultative examination findings and opinions but noted that opinions based on Plaintiff's subjective reporting were less credible because of

1    Plaintiff's inconsistent reporting of his own substance use to those providers.  Tr.

2    24-26.  Considering Plaintiff's physical impairments, the ALJ found that despite

3    alleging physical limitations such that he could only walk for a "couple blocks"

4    before needing to rest, objective imaging showed only mild findings and Plaintiff

5    never sought more extensive treatment than physical therapy.  Tr. 24, 26; *see* Tr.

6    710 (November 30, 2016: spinal imaging showed minimal scoliosis, multilevel

7    spondylosis with facet arthrosis, and degenerative disc changes); Tr. 685-706

8    (physical therapy records).  The ALJ reasonably concluded that these mild findings

9    did not support the level of limitation Plaintiff alleged.  Tr. 24-26.  This finding is

10    supported by substantial evidence.

11        *5.  Daily Activities*

12        The ALJ found Plaintiff's symptom reporting was inconsistent with his daily

13    activities.  Tr. 25.  The ALJ may consider a claimant's activities that undermine

14    reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial

15    part of the day engaged in pursuits involving the performance of exertional or non-

16    exertional functions, the ALJ may find these activities inconsistent with the

17    reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

18    "While a claimant need not vegetate in a dark room in order to be eligible for

19    benefits, the ALJ may discount a claimant's symptom claims when the claimant

20    reports participation in everyday activities indicating capacities that are

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18

1  transferable to a work setting" or when activities "contradict claims of a totally

2  debilitating impairment." *Molina*, 674 F.3d at 1112-13.  Here, the ALJ found that

3  Plaintiff's daily activities included riding bicycles, playing sports, hunting, and

4  fishing.  Tr. 25; *see* Tr. 718.  The evidence cited by the ALJ indicates that Plaintiff

5  expressed an interest in these activities, but it does not document whether Plaintiff

6  actually did these activities or with what frequency.  Tr. 718.  Accordingly, this

7  finding is not supported by substantial evidence.

8        Although the ALJ's finding here was error, the error is harmless.  Error in

9  evaluating a claimant's subjective symptom testimony is harmless where the ALJ

10  lists additional reasons, supported by substantial evidence, for discrediting

11  Plaintiff's symptom complaints.  *Molina*, 674 F.3d at 1115 ("[S]everal of our cases

12  have held that an ALJ's error was harmless where the ALJ provided one or more

13  invalid reasons for disbelieving a claimant's testimony, but also provided valid

14  reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec.*

15  *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ

16  committed in asserting one impermissible reason for claimant's lack of credibility

17  did not negate the validity of the ALJ's ultimate conclusion that the claimant's

18  testimony was not credible).  Here, because the ALJ provided several other clear

19  and convincing reasons to discredit Plaintiff's symptom testimony, the ALJ's error

20  is harmless.  Plaintiff is not entitled to relief on this ground.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 19

**C.  Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Rebekah Cline, Psy.D.; Ivonne Garcia, M.S.W.; Marybeth Wheeler, ARNP; Emma Billings, Ph.D.; Rita Flanagan, Ph.D.; John Gilbert, Ph.D.; and Donna LaVallie, D.O.  ECF No. 14 at 8-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician.  *Id.*  In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists.  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

The opinion of an acceptable medical source such as a physician or psychologist is different from that of a non-acceptable medical source. 20 C.F.R. § 416.927(f)(1). The ALJ is required to consider the opinions of non-acceptable medical sources. 20 C.F.R. § 416.927(c). The factors used to weigh the opinion of a non-acceptable medical source are the same as those used to weigh the opinion of an acceptable medical source, although not every factor will apply in every case. 20 C.F.R. § 416.927(c)(1)-(6), (f)(1). The ALJ is only required to provide germane reasons to reject the opinion of an "other source," including that of a non-acceptable medical source. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citing *Molina*, 674 F.3d at 1111).

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1      *1. Dr. Cline*

2          On September 30, 2015, Dr. Cline evaluated Plaintiff and opined Plaintiff

3   had marked impairment in his ability to understand, remember, and persist in tasks

4   by following detailed instructions; maintain appropriate behavior in a work setting;

5   and complete a normal work day and work week without interruptions from

6   psychologically based symptoms; that Plaintiff's impairments were not primarily

7   the result of drug or alcohol use within the past 60 days; and that Plaintiff's

8   impairments would be expected to last 9-12 months with treatment.  Tr. 498-502.

9   On August 31, 2016, Dr. Cline evaluated Plaintiff again and opined Plaintiff had a

10  series of moderate limitations in basic work activities, that Plaintiff's overall

11  severity rating was moderate, that Plaintiff's impairments were not primarily the

12  result of alcohol or drug use in the past 60 days, and that Plaintiff's impairments

13  would be expected to last 3-9 months with treatment.  Tr. 503-08.  In considering

14  the evidence of Plaintiff's functioning if he stopped the substance abuse, the ALJ

15  gave these opinions little weight.  Tr. 27.  Because Dr. Cline's opinion was

16  contradicted by Dr. Rubin, Tr. 46-49, Dr. Billings, Tr. 515-16, Dr. Flanagan, Tr.

17  95-96, and Dr. Gilbert, Tr. 108-10, the ALJ was required to provide specific and

18  legitimate reasons for rejecting Dr. Cline's opinions.  *Bayliss*, 427 F.3d at 1216.

19          First, the ALJ found Dr. Cline's opinions were entitled to less weight

20  because they were based on Plaintiff's own reporting of his drug use, which the

1   ALJ noted was inconsistent and indicated Plaintiff may have been using at the time

2   of Dr. Cline's examinations.  Tr. 24, 27.  An ALJ may properly reject a medical

3   opinion that is rendered without knowledge or acknowledgement of a claimant's

4   substance abuse.  *Cothrell v. Berryhill*, 742 F. App'x 232, 236 (9th Cir. July 18,

5   2018); *Coffman v. Astrue*, 469 F. App'x 609, 611 (9th Cir. Feb. 28, 2012).

6   Importantly, when conducting a DAA analysis, the "key factor" for the ALJ to

7   consider is whether the claimant would still be disabled if the claimant stopped

8   using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).  Therefore, a medical source's

9   understanding of the claimant's substance use is a relevant consideration when

10  weighing the opinion evidence in a DAA analysis.

11       Here, the ALJ noted that during the September 30, 2015 examination,

12  Plaintiff reported to Dr. Cline that he had not used methamphetamine in about

13  eight months, placing his last use in approximately January or February 2015.  Tr.

14  24-25; *see* Tr. 499.  However, the ALJ noted that other evidence in the record

15  indicated Plaintiff had used methamphetamine several times between January 2015

16  and September 2015.  Tr. 25; *see* Tr. 335 (September 15, 2015: Plaintiff reported

17  being sober since March 2015); Tr. 291 (August 4, 2015: Plaintiff reported that he

18  had used methamphetamine twice since April 2015).  During Dr. Cline's August

19  31, 2016 examination, Plaintiff reported his last use of methamphetamine was on

20  July 11, 2016.  Tr. 508.  However, the ALJ noted that Plaintiff missed a series of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 23

treatment sessions immediately prior to Dr. Cline's evaluation and reported a

relapse shortly thereafter.  Tr. 27; *see* Tr. 597-600 (Plaintiff did not attend group or

individual treatment from August 26, 2016 through September 1, 2016); Tr. 596

(September 6, 2016: Plaintiff reported a relapse and using methamphetamine over

the weekend); *see also* Tr. 647 (August 16, 2016: urine drug screen positive for

amphetamines and ecstasy two weeks before Dr. Cline's evaluation).  The ALJ

reasonably concluded that Dr. Cline's opinions were entitled to less weight for

being rendered without full knowledge of Plaintiff's drug use.  Tr. 27.  This finding

is supported by substantial evidence.

Second, the ALJ found Dr. Cline's opinion was entitled to less weight

because it was inconsistent with her own examination findings.  Tr. 27.

Inconsistency between a doctor's medical opinion and treatment records or notes is

a specific and legitimate reason to discount a doctor's opinion.  *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, the ALJ noted that despite

opining that Plaintiff would have marked limitation in understanding,

remembering, and persisting in tasks, the mental status examinations administered

by Dr. Cline showed only moderate limitations with memory and good

concentration.  Tr. 25, 27; *see* Tr. 502 (September 30, 2015: memory assessed in

the above average range and concentration within normal limits); Tr. 507 (August

31, 2016: memory and concentration within normal limits).  The ALJ reasonably

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 24

1    concluded that this evidence was inconsistent with Dr. Cline's opined limitations.

2    Tr. 27; *see, e.g., Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (ALJ

3    reasonably rejected medical opinion that Plaintiff experienced severe symptoms

4    when evidence showed only moderate symptoms).  This finding is supported by

5    substantial evidence.

6           Third, the ALJ found Dr. Cline's opinion was entitled to less weight because

7    it was inconsistent with evidence of Plaintiff's improvement with sobriety.  Tr. 27.

8    Relevant factors when evaluating a medical opinion include the amount of relevant

9    evidence that supports the opinion and the consistency of the medical opinion with

10   the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Plaintiff

11   challenges the ALJ's conclusion by arguing that the ALJ failed to cite "any

12   evidence or give an explanation to support this conclusion."  ECF No. 14 at 11.

13   However, a reviewing court is "not deprived of [its] faculties for drawing specific

14   and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881

15   F.2d 747, 755 (9th Cir. 1989).  The ALJ noted that Dr. Cline opined Plaintiff's

16   impairments were not caused by Plaintiff's methamphetamine use.  Tr. 27.  As

17   discussed *supra*, the ALJ identified evidence throughout the written findings

18   demonstrating that Plaintiff's functioning and mental health symptoms improved,

19   including a return to work, when he tapered or stopped his methamphetamine use.

20   *See, e.g.*, Tr. 767 (June 7, 2017: Plaintiff reported putting out job applications,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 25

volunteering at a food bank, and attending résumé-writing classes); Tr. 764 (June

14, 2017: Plaintiff reported feeling good now that he was sober and taking

medications as prescribed); Tr. 758-59 (June 22, 2017: Plaintiff reported being 72

days sober and attributed a decrease in his depressive symptoms to his sobriety;

Plaintiff reported that his mental health symptoms were "well controlled," and

scored a 3 on the PHQ-9, which exceeded his treatment goal of scoring a 5 on the

PHQ-9); Tr. 835 (July 3, 2017: Plaintiff completed intensive outpatient treatment);

Tr. 731 (July 3, 2017: Plaintiff reported looking for full-time employment); Tr. 753

(August 3, 2017: Plaintiff reported he was able to open a bank account and had

been saving money).  The ALJ's reasoning is sufficiently explained to "allow[] for

meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

The ALJ reasonably concluded that the evidence in the record of Plaintiff's

improved functioning during periods of sobriety was inconsistent with Dr. Cline's

opinion that his impairments were not attributable to his methamphetamine use.

Tr. 27.  This finding is supported by substantial evidence.

### 2.  Ms. Garcia

Ms. Garcia, Plaintiff's counselor, opined on March 23, 2017 had marked and

moderate limitations in all basic work activities, that Plaintiff would be off-task for

approximately 12-20% of the time in a 40-hour work week schedule, that

Plaintiff's impairments would cause him to miss 2 days of work per month, and

that these opined limitations did not include limitations from Plaintiff's then-current alcohol or drug use.  Tr. 667-70.  The ALJ did not give this opinion credit.  Tr. 28.  As a counselor, Ms. Garcia is not an acceptable medical source.  20 C.F.R. § 416.902(a).  Therefore, the ALJ was required to provide germane reason to discredit Ms. Garcia's opinion.[1]  *Popa*, 872 F.3d at 906 (citing *Molina*, 674 F.3d at 1111).

First, the ALJ found Ms. Garcia's opinion was entitled to less weight because it did not differentiate between Plaintiff's limitations with or without substance abuse.  Tr. 28.  As discussed *supra*, the question of whether Plaintiff's impairments were attributable to substance use is central to the DAA analysis.  20 C.F.R. § 416.935(b)(1).  However, the ALJ erred in concluding that Ms. Garcia's opinion did not distinguish between Plaintiff's limitations with or without

---

[1]     Plaintiff also challenges certain findings the ALJ made regarding Ms. Garcia's opinion before conducting the DAA analysis.  ECF No. 14 at 13.  The ALJ found Plaintiff was disabled at step three of the sequential evaluation analysis before considering DAA, so any error prior to the DAA analysis would be harmless because those steps were resolved in Plaintiff's favor.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

1    substance use.  The form on which Ms. Garcia's opinion was rendered clearly

2    states "The limitations noted do not include limitations from current alcohol or

3    drug use."  Tr. 669.  The ALJ's finding here is not supported by substantial

4    evidence.  However, the ALJ's error is harmless because the ALJ provided other

5    germane reason to discredit Ms. Garcia's opinion.  *Valentine v. Comm'r Soc. Sec.*

6    *Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

7         The ALJ also found Ms. Garcia's opinion was inconsistent with the

8    longitudinal evidence.  Tr. 28.  Inconsistency with the evidence is a germane

9    reason for rejecting other source testimony.  20 C.F.R. § 416.927(c)(4); *Bayliss*,

10   427 F.3d at 1218.  As discussed *supra*, the ALJ noted that Plaintiff reported

11   improved symptoms and improved functioning during his sobriety in the spring

12   and summer of 2017.  *See, e.g.*, Tr. 767 (June 7, 2017: Plaintiff reported putting

13   out job applications, volunteering at a food bank, and attending résumé-writing

14   classes); Tr. 764 (June 14, 2017: Plaintiff reported feeling good now that he was

15   sober and taking medications as prescribed); Tr. 758-59 (June 22, 2017: Plaintiff

16   reported being 72 days sober and attributed a decrease in his depressive symptoms

17   to his sobriety; Plaintiff reported that his mental health symptoms were "well

18   controlled," and scored a 3 on the PHQ-9, which exceeded his treatment goal of

19   scoring a 5 on the PHQ-9); Tr. 835 (July 3, 2017: Plaintiff completed intensive

20   outpatient treatment); Tr. 731 (July 3, 2017: Plaintiff reported looking for full-time

employment); Tr. 753 (August 3, 2017: Plaintiff reported he was able to open a bank account and had been saving money).

Plaintiff challenges the ALJ's reliance on this evidence as irrelevant because it is from after the end of the closed period. ECF No. 14 at 14. Again, this evidence is directly relevant to the ALJ's DAA analysis because it demonstrates Plaintiff's functioning during a period in which Plaintiff stopped using controlled substances. *See* SSR 13-2p, 2013 WL 621536, at *12. Indeed, Plaintiff amended his application for benefits to a closed period claim precisely because Plaintiff's functioning during this time improved to the point that he could return to work. Tr. 42-43. This evidence is relevant, and the ALJ's conclusion that it is inconsistent with Ms. Garcia's opined limitations is supported by substantial evidence.

*3. Ms. Wheeler*

Ms. Wheeler, Plaintiff's treating ARNP, opined on April 5, 2017 that Plaintiff was limited to light work. Tr. 671-73. The ALJ gave this opinion little weight. Tr. 28. As an ARNP, Ms. Wheeler is not an acceptable medical source.[2]

---

[2]    Plaintiff notes that new Social Security regulations recognize ARNPs as acceptable medical sources. ECF No. 14 at 8. However, because Plaintiff's case was filed before March 27, 2017, these new regulations do not apply to Plaintiff's claim. 20 C.F.R. §§ 416.902(7), 416.325.

1    20 C.F.R. § 416.902(a).  Therefore, the ALJ was required to provide germane

2    reason to discredit Ms. Wheeler's opinion.  *Popa*, 872 F.3d at 906 (citing *Molina*,

3    674 F.3d at 1111).

4        First, the ALJ found Ms. Wheeler's opinion was inconsistent with the

5    longitudinal evidence.  Tr. 28.  Inconsistency with the evidence is a germane

6    reason for rejecting other source testimony.  20 C.F.R. § 416.927(c)(4); *Bayliss*,

7    427 F.3d at 1218.  The ALJ noted that Ms. Wheeler supported her opined

8    limitations by citing to an x-ray of Plaintiff's elbow, and that Ms. Wheeler's

9    opinion made minimal discussion of Plaintiff's lumbar impairment.  Tr. 28; *see* Tr.

10   671-72, 709 (March 23, 2017: x-ray imaging showed no acute fracture or

11   dislocation and multiple calcific bodies in Plaintiff's elbow).  The ALJ also noted

12   that the record contained evidence of mild lumbar impairment for which Plaintiff

13   did not seek more intensive treatment than physical therapy.  Tr. 26; *see* Tr. 710

14   (November 30, 2016: spinal imaging showed minimal scoliosis, multilevel

15   spondylosis with facet arthrosis, and degenerative disc changes); Tr. 685-706

16   (physical therapy records).  The ALJ reasonably concluded that this mild evidence

17   did not support Ms. Wheeler's opinion that Plaintiff should be limited to light

18   work.  Tr. 28.  This finding is supported by substantial evidence.

19       Second, the ALJ found Ms. Wheeler's opinion was inconsistent with the

20   opinion of Dr. LaVallie, who had the opportunity to review the longitudinal record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 30

1    Tr. 28.  An ALJ may choose to give more weight to an opinion that is more

2    consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("[T]he more

3    consistent an opinion is with the record as a whole, the more weight we will give to

4    that opinion.").  Additionally, the opinion of a nonexamining physician may serve

5    as substantial evidence if it is supported by other evidence in the record and is

6    consistent with it.  *Andrews*, 53 F.3d at 1041.  The ALJ noted that Dr. LaVallie

7    reviewed the medical evidence from 2014 through 2016 and found that there was

8    little evidence submitted after Dr. LaVallie's review that related to Plaintiff's

9    physical condition.  Tr. 27-28.  The ALJ found that Dr. LaVallie's opined

10   limitations were more consistent with the minimal physical findings discussed

11   *supra*.  Tr. 27.  The ALJ reasonably credited Dr. LaVallie's opinion over that of

12   Ms. Wheeler.  Tr. 28.  This finding is supported by substantial evidence.

13       *4.  Dr. Billings*

14       Dr. Billings examined Plaintiff on September 21, 2016 and opined that

15   Plaintiff's methamphetamine abuse was likely ongoing, that Plaintiff's anxiety was

16   common among individuals who are methamphetamine users, and that Plaintiff

17   would likely have difficulty working in any situation requiring frequent public

18   contact.  Tr. 515-16.  The ALJ gave Dr. Billings' opinion significant weight.  Tr.

19   27.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 31

1      Plaintiff challenges the ALJ's finding that Dr. Billings' opinion supports a

2  conclusion that Plaintiff's mental impairments are related to substance abuse,

3  arguing that this conclusion is not supported.  ECF No. 14 at 15.  Dr. Billings'

4  diagnoses included Methamphetamine Induced Anxiety Disorder, and Dr. Billings

5  specifically opined that Plaintiff's methamphetamine abuse was likely ongoing and

6  that Plaintiff's anxiety was common among individuals who are methamphetamine

7  users.  Tr. 515-16.  The ALJ also found that Dr. Billings' opinion was consistent

8  with the longitudinal evidence, discussed throughout this Order, that Plaintiff's

9  functioning improved with sobriety.  Tr. 27.  The ALJ reasonably concluded that

10  Dr. Billings' opinion supported a finding that Plaintiff's impairments were related

11  to his substance use.  *Id.*  This finding is supported by substantial evidence.

12      To the extent Plaintiff challenges the ALJ's evaluation of Dr. Billings'

13  opinion prior to conducting the DAA analysis, any such error would be harmless

14  because those steps were resolved in Plaintiff's favor.  *See Stout*, 454 F.3d at 1055;

15  *Burch*, 400 F.3d at 682.  Plaintiff does not establish harmful error here.

16   *5.  Reviewing Medical Sources*

17      Dr. Flanagan, Dr. Gilbert, and Dr. LaVallie each reviewed the record and

18  rendered opinions on Plaintiff's functional limitations.  Tr. 95-96, 108-10.  The

19  ALJ gave each of these opinions significant weight.  Tr. 27.  Plaintiff challenges

20  the ALJ's finding by arguing that the ALJ failed to sufficiently explain why these

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 32

1    opinions were found to be consistent with the evidence.  ECF No. 14 at 16.

2    However, Plaintiff's argument relies on authority governing the ALJ's rejection of

3    medical opinion evidence, not an ALJ's decision to credit medical opinion

4    evidence.  *Id.*; *see Garrison*, 759 F.3d at 1012-13.  Because the ALJ credited these

5    opinions, Plaintiff identifies no error.

6        Additionally, as explained throughout this Order, the ALJ observed that the

7    longitudinal evidence of record showed evidence of only mild physical

8    impairments and mental impairments that, while disabling when Plaintiff's

9    substance abuse was included, decreased in severity to the point that Plaintiff was

10   able to return to full-time work when he tapered and stopped using

11   methamphetamine.  Tr. 20-26.  The ALJ's finding that the reviewing sources'

12   opinions were consistent with the longitudinal evidence is sufficiently explained.

13   *Brown-Hunter*, 806 F.3d at 492.  Moreover, the Court may not reverse the ALJ's

14   decision based on Plaintiff's disagreement with the ALJ's interpretation of the

15   record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to

16   more than one rational interpretation" the court will not reverse the ALJ's

17   decision).  Plaintiff establishes no harmful error in the ALJ's evaluation of the

18   reviewing source medical opinion evidence.

19   //

20   //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 33

1

**CONCLUSION**

2    Having reviewed the record and the ALJ's findings, this Court concludes the

3 ALJ's decision is supported by substantial evidence and free of harmful legal error.

4 **ACCORDINGLY, IT IS HEREBY ORDERED:**

5    1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED.

6    2.  Defendant's Motion for Summary Judgment (ECF No. 21) is

7       GRANTED.

8    The District Court Executive is directed to enter this Order, enter judgment

9 accordingly, furnish copies to counsel, and **close the file**.

10    **DATED** May 15, 2020.

11



12                THOMAS O. RICE
                Chief United States District Judge

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 34